# UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| In re: ) | Case No. 08-50521-SCS |
| ) | |
| MICHAEL STEPHEN SMITH, ) | |
| ) | |
| *Debtor*. ) | Chapter 13 |
| ) | |

## MEMORANDUM OPINION

A hearing on the Objection to Claim filed by the debtor, Michael Stephen Smith ("Smith"), to Proof of Claim Number 8 filed in the above-captioned case by George R. Leach ("Leach") was conducted on November 14, 2008 ("Claim Objection"). At that time, the Claim Objection was taken under advisement. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a). Upon consideration of the pleadings and the arguments by the parties, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

The contentious saga of Smith and Leach began in this Court in 1994, when Smith filed a petition under Chapter 7 of the United States Bankruptcy Code, being designated as Case Number 94-41952 ("Original Bankruptcy"). In the Original Bankruptcy, Stephan Simmons ("Simmons") filed a complaint to determine whether a debt owed him by Smith was subject to discharge, which was designated as Adversary Proceeding Number 94-4078 ("Adversary"). Leach represented Simmons in the Adversary. At the conclusion of the trial of the Adversary, Judge Adams of this Court found in favor of Simmons and awarded a nondischargeable judgment against Smith in the amount of $32,790.00 ("Judgment"). Simmons died on October 19, 1998. No administration of the

estate of Simmons occurred until June 5, 2002, when James Lee Simmons and Marlene L. Simmons, the parents of Simmons, were appointed administrators of the estate of Simmons by the Circuit Court for the City of Williamsburg and James City County, Virginia (collectively "Administrators").

Subsequent to the death of Simmons, Leach attempted various efforts to collect the Judgment from Smith. The circumstances of these collection attempts are complicated. It is sufficient for the purpose of this Opinion to summarily recount that Leach's efforts resulted in the liquidation of certain real property owned by Smith and the receipt of some monies from a garnishment filed against Smith. The proceeds of these collection efforts were retained by Leach. No portion of the proceeds was apparently ever paid over to the estate of Simmons by Leach. These collection efforts also ultimately led to a complaint being lodged with the Virginia State Bar concerning Leach by a state court judge, which had the result of Leach being found to have engaged in professional misconduct in the collection efforts. As a result of the findings of professional misconduct, Leach was disbarred.

During the time between the entry of the Judgment and this proceeding, Leach apparently brought a variety of actions against Smith, the Administrators, and others, including the Virginia State Bar and a state court judge, both in state court and the United States District Court for the Eastern District of Virginia.[1] The proceeding in the United States District Court was dismissed.[2]

---

[1] Leach also moved this Court to hold Smith in contempt and reopen the Original Bankruptcy and the Adversary in 2007. These motions were denied by an order entered on November 13, 2007.

[2] Judge Friedman described a portion of the proceedings between Leach, Smith, and the Administrators as follows:

> The factual and procedural history of this case is more fully set out in this court's order of July 2, 2007, dismissing the plaintiff's claim against the

On May 6, 2008, Smith filed a petition under Chapter 13 of the United States Bankruptcy Code in this Court, being designated as Case Number 08-50521. Neither Simmons, the Administrators, nor Leach were scheduled as creditors. On May 8, 2008, Smith filed his initial Chapter 13 Plan, in which he proposed to pay his creditors $1,315.00 per month for forty-three (43) months. This plan was objected to by a scheduled creditor, Chase Home Finance LLC, and at a hearing conducted on July 11, 2008, the objection was sustained, and confirmation of Smith's initial Chapter 13 Plan was denied.

On July 15, 2008, Leach, listing himself as a "pro se creditor," filed a Motion for Leave to File an Objection to Chapter 13 Plan with this Court. Among other things, Leach stated he learned of Smith's bankruptcy filing when he discovered a suggestion in bankruptcy filed in a pending state

---

Simmonses and the other defendants. After the plaintiff was disciplined by the defendant Virginia State Bar and therefore had his license to practice law revoked, he began a series of lawsuits against some or all of the defendants in an apparent attempt to vindicate his actions that led to disbarment. This included a claim he made on the estate of the Simmonses' son for unpaid fees for his earlier representation of their son, which was denied on December 10, 2003. The plaintiff then filed a motion to vacate the order that closed the estate and a petition for a writ of prohibition, which were dismissed by the Virginia Supreme Court.

Next, the plaintiff filed two claims in state court that were consolidated and tried in May of 2005, resulting in a verdict against the plaintiff on all the counts of his complaint. The plaintiff petitioned the Supreme Court of Virginia for appeal, but was denied, and his motion for reconsideration was similarly denied. Finally, the plaintiff filed the instant action in this case, alleging that the defendants had conspired to deprive him of his law license. This court dismissed the claim because, inter alia, the statute of limitations had expired, and the plaintiff had failed to make a proper claim under 42 U.S.C. § 1983 against the Simmonses.

*George R. Leach v. Michael Stephen Smith, James L. Simmons, Marlene L. Simmons, and Virginia State Bar*, Civil Action No. 4:06cv155, Order and Opinion, at 2 (E.D. Va. filed July 25, 2007).

court proceeding to which Leach and Smith were parties. Leach prayed that he be permitted to file an objection to confirmation of the initial plan of Smith and a proof of claim in the case. Also on July 15, 2008, Leach filed a Proof of Claim, designated as Proof of Claim Number 8, with this Court, asserting a secured claim in the amount of $28,048.98 by reason of a judgment against Smith ("Leach Claim").

On July 28, 2008, Leach, characterizing himself as a judgment creditor of Smith, filed an objection to the initial Chapter 13 Plan of Smith and, among other contentions, alleged that "[t]he balance due on this judgment to the objector [Leach] is $28,048.98" and "[t]he balance due to the estate of Stephen Simmons from the debtor is unknown but may exceed some $19,000.00." On August 8, 2008, a hearing was held on Leach's Objection. Because the Court earlier had sustained the objection of Chase Home Finance LLC and ordered Smith to file an amended Chapter 13 Plan, the Court treated the objection of Leach as mooted and further ordered Smith to provide Leach with a copy of any amended Chapter 13 Plan filed by Smith.

On August 11, 2008, Smith filed an Amended Chapter 13 Plan, which modified the treatment of the secured claim of Chase Home Finance LLC. On September 2, 2008, Smith filed an amended Schedule F, Creditors Holding Unsecured Nonpriority Claims, which scheduled "James and Marleen Simmons, 5487 Ware Creek Road, Williamsburg, Virginia 23188" for a claim for "contingent fees" incurred in 1992 in the amount of $1.00. On the same day, counsel for Smith filed a "Notice to Creditors" wherein counsel for Smith certified that an amendment to the schedules of Smith had been made adding Mr. and Mrs. Simmons as creditors. The notice was sent to "James and Marleen Simmons 5487 Ware Creek Williamsburg, VA 23188" and along with the notice, a copy of the

amendment was forwarded to the Administrators.[3]

On September 8, 2008, R. Clinton Stackhouse, Jr., the Chapter 13 Trustee, filed an objection to the Amended Chapter 13 Plan, alleging that, inasmuch as Smith had scheduled an amount of annual income greater than the statistical median for the Commonwealth of Virginia, he was required to propose a plan that provided either for the payment of one hundred percent (100%) of his unsecured claims or for plan payments to be made for not less than sixty (60) months. On September 24, 2008, Leach filed an Objection to the Amended Chapter 13 Plan of Smith, which recited Leach's version of the collection efforts on the Judgment and, among other grounds, alleged that "it would be in the best interest of justice that the Objector's previously filed proof of claim be included in this bankruptcy case and that his objections to the amended Chapter 13 plain [*sic*] be admitted so the creditors may proceed to prosecute their claims in accordance with the law. . . ."

On September 29, 2008, Smith filed a Second Amended Chapter 13 Plan, which modified the funding of the Plan to provide for payment to the Trustee of "the sum of $1,315.00 Monthly for 3 months, then $1,076.00 Monthly for 1 months [*sic*], then $861.00 Monthly for 49 months." The Second Amended Chapter 13 Plan provides that the total amount to be paid into the plan is $47,210.00. On October 3, 2008, the Chapter 13 Trustee objected to the Second Amended Chapter 13 Plan of Smith, complaining that the plan failed to either pay Smith's unsecured creditors one hundred percent (100%) of their claims or to provide for plan payments to be made for not less than

---

[3] On September 29, 2008, an amendment to schedules identical to the amendment filed on September 2, 2008, adding the Administrators as a creditor was filed with the Court, and a second notice of their addition as creditors was promulgated to the Administrators this date.

sixty (60) months.[4]

Two days earlier, Smith had objected to the Leach Claim, reciting at length the circumstances of Leach being disbarred by reason of his collection efforts and asserting that "[c]urrently the estate in question [of Simmons] is not and can not [*sic*] be represented by George Leach, whose license to practice law has been revoked" and "the Estate of Stephen Simmons, holder of the judgment is represented by Attorney Michael L. Heikes" as reflected on the Exhibit A attached to the Claim Objection.[5] On October 23, 2008, Leach filed a lengthy response to the Claim Objection and, in addition to reciting his understanding of the collection events after the death of Simmons, asserted that he had an attorney's lien on the judgment obtained by Simmons against Smith. Also on October 23, 2008, Leach filed an Objection to the Second Amended Plan of Smith, which at its core objected to the treatment of the claim of Simmons' heirs being listed at a value of $1.00 and reiterating his previous assertions of his entitlement to make a claim on his behalf against Smith for the monies Leach believes are owed him by reason of his obtaining the Judgment for Simmons. Finally, on November 3, 2008, Leach filed a motion asking this Court to estimate the amount of the Leach Claim pursuant to 11 U.S.C. § 502.

---

[4] The Court has been advised by the Chapter 13 Trustee that his objections to confirmation of both the Amended Chapter 13 Plan and the Second Amended Chapter 13 Plan have been resolved to his satisfaction.

[5] A review of the docket of the present case indicates the Administrators have neither objected to the Chapter 13 Plan or subsequent amended plans of Smith nor have they filed a proof of claim. Counsel for Smith represented during the hearing on the Claim Objection that he had contacted counsel for the Administrators concerning signing a proof of claim. The Administrators' counsel advised Smith's counsel that the Administrators would not execute the proof of claim, that they were tired of the case and tired of Leach, and they had advised him that they were in their eighties and "didn't want anything to do with it," presumably referring to this present case.

Case 08-50521-SCS    Doc 76    Filed 12/05/08    Entered 12/05/08 10:27:26    Desc Main
                   Document      Page 7 of 16

A highly contentious and protracted hearing was conducted on the Claim Objection on November 14, 2008. The evidence consisted largely of a review of the proceedings during the thirteen-year saga between Smith and Leach. Much of the evidence adduced by Smith consisted of the introduction of the factual stipulations in the disciplinary proceeding in which Leach was disbarred. Leach denied the truthfulness of many of these stipulations. Leach repeatedly asked this Court "to clear his name" in this case. Leach continued to assert that he holds an attorney's lien on the Judgment and testified extensively as to the amount he believes he remains owed by Smith by reason of the Judgment, but other than submitting the original retention letter dated December 4, 1992, and signed by Simmons[6] as an attachment to his response to the Claim Objection, Leach

---

[6] The retention letter was apparently signed by Simmons on December 4, 1992, and provides as follows:

TO:   George R. Leach
      Attorney at Law
      P. O. Box 1495
      Williamsburg, VA 23187

Subject:   Legal Representation

Dear Mr. Leach,

    I hereby request and authorize you to represent me as my attorney in my claim against Michael Stephen Smith doing business as Lightfoot Deli & Amusements and or any other person(s), firm(s) and/or corporation(s), as you deem advisable, for personal injuries and mental distress received.

    As compensation for your services as my attorney, I agree to pay you, whether obtained by suit or compromise: fifty (50%) percent of the gross proceeds of any recovery made whether by judgment or settlement.

    I understand that it may be necessary from time to time for you to make cash disbursements on my behalf for items including but not limited to investigation, long distance telephone calls, travel, preparation for trial, medical reports, court costs depositions and other similar expenses in connection with my

provided no evidence of his attorney's lien or of any perfection thereof. Leach and Smith agree on virtually nothing; however, importantly, they do agree that Leach does not and cannot presently represent the estate of Simmons. Distilling the assertions of Leach, it appears the essence of Leach's contentions is that he is entitled to assert a claim against Smith by reason of the amounts he claims are owed to him by reason of the Judgment, and that because of his alleged attorney's lien, he may assert such a claim independent of the action or inaction of the Administrators. Smith contends any claim against him arising by reason of the Judgment is solely the property of the Administrators, and the Administrators have declined to object to the proposed treatment of their claim as scheduled and provided for in the Second Amended Chapter 13 Plan of Smith.[7] It remains for this Court to rejoin the flay between Smith and Leach and determine the validity of the Claim Objection to the Leach Claim.[8]

---

        case. In the event there is a recovery, such cash disbursements on my behalf will be reimbursed to you in addition to the aforesaid attorney's fees. In the event there is no recovery, I shall not be obligated for any attorney's fees, but I understand that I shall have to repay such cash disbursements.

*See* Attachment to Response to Objection to Claim filed by George R. Leach, October 23, 2008, at Docket Entry 58.

   [7] Smith also contends that the state court has foreclosed any additional claim by Leach for attorney's fees in an earlier ruling in a portion of the extensive litigation among Leach, Smith, and Simmons. In connection with this contention, Smith introduced into evidence two orders which he contends determined Leach was not entitled to be paid any additional attorney's fees beyond the amounts he collected for his benefit after the death of Simmons. With respect to the Court's analysis of this evidence, see footnote 11, *infra.*

   [8] On November 21, 2008, Leach filed a Motion for Reconsideration, which this Court construed as a motion for a rehearing on the Claim Objection. Leach cited as his grounds for rehearing his desire to put on additional evidence concerning the circumstances of the revocation of his bar license and as to the amounts credited as paid to him for his attorney's fees in the Adversary. As this Court does not rely on either circumstance to reach its decision here, the Motion for Rehearing was denied.

**Conclusions of Law**

Both Smith and Leach would have this Court revisit the long conflagration among Smith, Simmons, and Leach to determine the validity of the Claim Objection. Fortuitously, a reconstruction of the effects of the endless litigation between these parties is unnecessary to resolve the Claim Objection. Instead, application of a relatively simple legal principle provides the answer to Smith and Leach.

Judge Huennekens of this Court has recently explained the claims objection process:

> A timely and properly filed proof of claim under 11 U.S.C. § 501 is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); FED. R. BANKR. P. 3001(f). Any objection must be in writing and delivered to the claimant at least 30 days prior to any hearing scheduled thereon. FED. R. BANKR. P. 3007(a). The hearing on the claim objection is treated as a contested matter, and FED. R. BANKR. P. 9014 applies.
>
> A proof of claim constitutes "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). It has long been the rule that the party objecting to the proof of claim must present sufficient evidence to overcome the prima facie validity of a properly and timely filed proof of claim. *See, e.g.*, *C-4 Media Cable South, L.P. v. Reds T.V. & Cable, Inc.* (*In re C-4 Media Cable South, L.P.*), 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). The mere filing of an objection does not satisfy this requirement. *Id.* (citing *In re Trending Cycles for Commodities Inc.*, 26 B.R. 350, 351 (Bankr. S.D. Fla. 1982) and *In re Lanza*, 51 B.R. 125, 127 (Bankr. D.N.J. 1985), *reconsideration denied*, 55 B.R. 354 (Bankr. D.N.J. 1985)). If sufficient evidence is presented to overcome the initial presumption, the burden shifts back to the creditor to prove the validity and amount of its claim.

*In re Fleming*, Case No. 08-30200, 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008) (slip op.).

The question before this Court may be reduced to two issues: (1) whether Leach has a claim against Smith independent of the Judgment, or (2) whether Leach has a sufficient interest in the Judgment to permit him to assert his claim against Smith. If he has neither, then the Claim Objection must be sustained.

First, an analysis of the nature of Leach's potential claim is required. All of the evidence, along with Leach's admissions, makes plain two factual conclusions: (1) that any claim by Leach against Smith arises solely by reason of the Judgment; and (2) Leach does not and now cannot represent the estate of Simmons in the assertion of the claim against Smith arising by reason of the Judgment. Accordingly, in order to assert his claim against Smith, the attorney's fees allegedly owed to Leach by reason of the Judgment must constitute a claim which Leach may assert against Smith separate and apart from the claim represented by the Judgment. The evidence and admissions and the record of the Adversary incontrovertibly show the Judgment remains the property of the estate of Simmons and therefore controlled by the Administrators.[9] Leach believes his alleged entitlement to legal fees by reason of his contingent fee contract with Simmons is either a claim he controls or is sufficient to permit him, without the authorization of the estate of Simmons, to assert the Judgment as a claim against Smith. The validity of a creditor's claim is determined by rules of state law. *Metalmark Nw., L.L.C. v. Stewart* (*In re Stewart*), Case No. 07-10860, 2008 WL 687107, at *2 n.2 (Bankr. E.D. Va. Mar. 7, 2008) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)).

**I. Does Leach Have a Claim Against Smith Independent of the Judgment?**

It is axiomatic that in federal courts a claim may only be asserted by the real party in interest. Rule 7017 of the Federal Rules of Bankruptcy Procedure incorporates the provisions of Rule 17 of the Federal Rules of Civil Procedure, which provides, in pertinent part:

---

[9] Judge Adams entered judgment on August 11, 1995, against Smith in the amount of $290.00 for medical costs, $7,500.00 for emotional distress, civil battery, and defamatory publications, and $25,000.00 for punitive damages. The Judgment was solely awarded to Simmons, who was the sole plaintiff in the Adversary, and did not award any attorney's fees to Simmons or to Leach.

    (a)    Real Party in Interest.

        (1)    Designation in General. An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:

            (A)    an executor;

            (B)    an administrator;

            (C)    a guardian;

            (D)    a bailee;

            (E)    a trustee of an express trust;

            (F)    a party with whom or in whose name a contract has been made for another's benefit; and

            (G)    a party authorized by statute.

    . . . .

        (3)    Joinder of the Real Party in Interest. The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted in the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

    (b)    Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:

        (1)    for an individual who is not acting in a representative capacity, by the law of the individual's domicile.

FED. R. CIV. P. 17(a)(1), (a)(3), (b)(1) (2008). The purpose of Rule 17 is to ensure that the person bringing a lawsuit has the right to enforce the asserted claim. *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973).

No decisions appear to have considered circumstances identical to those here. However,

decisions have considered whether an attorney who is awarded fees as part of a larger judgment made solely in favor of his client in a divorce proceeding may subsequently initiate an action against the adverse spouse to challenge the dischargeability of the awarded fees. These decisions largely have decided such an attorney-claimant is without standing to bring a claim.

In *Macys v. Macys* (*In re Macys*), 115 B.R. 883 (Bankr. E.D. Va. 1990), the divorce decree entered in the state court proceeding ordered the debtor, Joseph Macys, to pay monthly child and spousal support plus a monetary equitable distribution award of $112,170.00 and $5,120.85 of Ms. Macys' attorney fees. *Id*. at 887-89. Subsequently, the party ordered to pay the attorney's fees filed a petition under Chapter 7 of the Bankruptcy Code, and the debtor's former spouse and her attorney filed a complaint seeking a determination that the awards in the state court divorce proceeding were nondischargeable. *Id*. at 889. The attorney was found to lack standing to prosecute the claim, with Judge Tice concluding "since the judgment was in favor of Ms. Macys and not her attorney, the attorney lacks standing, and his complaint must be dismissed." *Id.* at 893. *Accord In re Taylor*, 252 B.R. 346, 351 (Bankr. E.D. Va. 1999) ("Because the divorce decree requires the debtor to make payment to Ms. Taylor rather than attorneys Murdoch-Kitt and McCall, the debtor has standing but attorneys Murdoch-Kitt and McCall do not."); *Cooley v. Sposa* (*In re Sposa*), 31 B.R. 307, 312 (Bankr. E.D. Va. 1983) ("The [state court divorce] decree did not make the fees payable to [the attorney]. Where an attorney sues to recover fees awarded his client, he must sue on behalf of the party awarded the fees.").

The Sixth Circuit Court of Appeals has aptly described the reasoning of this conclusion:

> Standing is a rather vague concept that defies precise formulation, but it seems to require, at the least, that a plaintiff have a personal stake in the outcome of the litigation. As a general rule, one party may not assert the rights of another, but there are exceptions. In certain instances, a plaintiff with a particularly close

> relationship to a third party may assert the rights of the third party where the plaintiff faces an actual economic harm.
>
> The plaintiffs' interest here consists of a desire to be paid for services rendered. This seems, at least superficially, to give the plaintiffs a definite stake in the outcome of this litigation. The plaintiffs, however, have no enforceable right to payment. Barry and Gertrude Perlin were the only parties to the divorce proceeding. The divorce decree affects only the relations between the debtor and his former spouse. The judgment ordering Perlin to pay his former spouse's attorney fees was rendered in her name, not the plaintiffs'. We have found no authority that would permit the plaintiffs to sue in Arizona to enforce the terms of the divorce decree.

*O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears v. Perlin* (*In re Perlin*), 30 F.3d 39, 41 (6th Cir. 1994). *See also Greer v. O'Dell*, 305 F.3d 1297, 1303 (11th Cir. 2002) (finding that a mortgage servicer had standing to file a proof of claim because under servicing agreement the servicer was obligated to file a proof of claim on behalf of the mortgage holder).

A review of the Judgment makes plain that the award in the Adversary by this Court was solely to Simmons, and there was no separate award of attorney's fees to Leach. Accordingly, Leach has no independent claim against Smith separate from the Judgment, and therefore has no standing to assert such a claim in this proceeding.

**II. Does Leach Have a Sufficient Financial Interest in the Judgment to Enforce It?**

Leach asserts he has an attorney's lien on the Judgment and any proceeds thereof, and therefore he has a sufficient financial interest in the Judgment to assert a claim based upon it. In Virginia, an attorney's lien is founded upon the provisions of Virginia Code § 54.1-3932, which provides, in pertinent part:

> A. Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract or for a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause of action or claim. When any such contract is made, and written notice of the claim of such lien

13

> is given to the opposite party, his attorney or agent, any settlement or adjustment of the cause of action shall be void against the lien so created, except as proof of liability on such cause of action. Nothing in this section shall affect the existing law in respect to champertous contracts. In causes of action for annulment or divorce an attorney may not exercise his claim until the divorce judgment is final and all residual disputes regarding marital property are concluded. Nothing in this section shall affect the existing law in respect to exemptions from creditor process under federal or state law.

VA. CODE ANN. § 54.1-3932(A) (2008).

No proof was adduced by Leach to show he ever specifically asserted or perfected an attorney's lien relating to the Judgment. However, even assuming *arguendo* that Leach possesses an attorney's lien relating to the Judgment, it appears that interest would be insufficient to permit Leach to assert a claim pursuant to the Judgment.

It appears once again no decisions have considered factual circumstances such as here where a former counsel asserts a right to file a proof of claim founded upon an award made solely in favor of his client and against the party filing for bankruptcy protection.[10] However, Judge Kellam has provided guidance in the resolution of the Leach Claim. In *Katopodis v. Liberian S/T Olympic Sun*, 282 F. Supp. 369 (E.D. Va. 1968), a settlement offer was made to a seaman in an action where the seaman's attorney had contracted to receive a fifty percent (50%) contingency fee and had given notice of his lien in writing to the opposing counsel. *Id*. at 371. The seaman accepted the offer without his counsel's knowledge, and the counsel asserted a claim against the seaman for his contingent fee. *Id*. at 372. Judge Kellam recognized the fundamentals of the relationship between

---

[10] A review of prior decisions exhibits a number of decisions relating to the assertion of a claim against a debtor's estate for work performed by an attorney on behalf of the estate. *See, e.g.*, *Travelers Cas. & Sur. Co. v. Desselle* (*In re Fries*), 378 B.R. 304, 314-17 (Bankr. D. Kan. 2007); *Metro Mach. Corp. v. Berkley Shipbuilding & Drydock Corp.* (*In re Ward*), 32 B.R. 318 (Bankr. E.D. Va. 1983).

a client and his attorney:

> A plaintiff has the right to make settlement of his claim directly with defendant and without the knowledge or consent of his employed counsel. But, by so doing, he cannot deprive the attorney of his fee. He cannot, however, dismiss the action, where defendant has appeared, except by order of the Court and upon such terms and conditions as the Court deems proper.

*Id.* at 371.

In this context, especially in the absence of any proof of the existence of a perfected attorney's lien on the part of Leach relating to Simmons or the Judgment, it does not appear there is any legal basis for Leach to assert a right directly to enforce the Judgment against Smith without the authorization of the Simmons estate. It is undisputed the Judgment and any claims based upon it are the property of the estate of Simmons. It is also undisputed that Leach does not represent the estate of Simmons. As illuminated by Judge Kellam, a client has the right to make a settlement without the knowledge or consent of his counsel, including presumably, as here, declining to assert a claim against Smith to collect upon that Judgment or contest the valuation of the claim arising by reason of the Judgment. Such inaction under the principles recognized in *Katopodis* could possibly expose the estate of Simmons or the Administrators for payment of Leach's fee. However, any claim is owned by the estate, and it remains solely its province to elect to enforce it against Smith.[11]

---

[11] This Court expressly makes no determination as to the liability, if any, of the estate of Simmons or the Administrators to Leach. Leach apparently has previously initiated actions in the state and federal courts to which the Administrators were party defendants. Judge Friedman, in his Order and Opinion in *George R. Leach v. Michael Stephen Smith, James L. Simmons, Marlene L. Simmons, and Virginia State Bar*, Civil Action No. 4:06cv155 (E.D. Va. filed July 25, 2007), observed that the actions initiated by Leach "included a claim he made on the estate of the Simmonses' son for unpaid fees for his earlier representation of their son, which was denied on December 10, 2003." *Id*. at 2. Smith provided some minimal evidence that the state court, in a proceeding involving Smith, Leach, and the Administrators, had concluded Leach was not entitled to the payment of any additional attorney's fees by reason of his representation of Simmons. However, the orders which Smith relied upon in this regard, without more of the state

Accordingly, Leach is without authorization or standing to assert any claim against Smith founded upon the Judgment.

## Conclusion

The Claim Objection filed by Smith to Proof of Claim Number 8 filed by Leach must be sustained. Leach does not possess a claim independent of the Judgment that would support his Proof of Claim. Leach does not represent the estate of Simmons so as to permit him to assert a claim against Smith by reason of the Judgment. Leach does not have an interest in the Judgment that would permit him to assert a claim against Smith without the authorization of the Simmons estate.

A separate Order will be entered by the Court.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to George R. Leach, Post Office Box 1495, Williamsburg, Virginia 23187; to Olaf F. Gebhart, Jr., Attorney for Michael S. Smith; to R. Clinton Stackhouse, Jr., Chapter 13 Trustee; and to Debera F. Conlon, Assistant United States Trustee.

**Entered this 5th day of December, 2008.**

_____
STEPHEN C. ST. JOHN
United States Bankruptcy Judge

---

court record, are insufficient to permit this Court to determine that Leach's right to any additional attorney's fees has been conclusively adjudicated by the state court.